UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LEE ANN M.,[1]

    **Plaintiff,**

v.

MARTIN O'MALLEY,
**Commissioner of Social Security,**

    **Defendant.**

Case No. 3:22-cv-1104
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Lee Ann M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.      **PROCEDURAL HISTORY**

On February 6, 2019, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since May 30, 2018. R. 108–09, 145–46, 258–69. The applications were denied initially and upon reconsideration. R. 147–58, 162–67. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 169–70. ALJ Marguerite Toland held a hearing on January 26, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 42–71. In a decision dated June 29, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 30, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 26–36. That decision became final when the Appeals Council declined review on December 1, 2021. R. 12–17. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 26, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On August 8, 2022, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

II.     **LEGAL STANDARD**

   A.      **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.   Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be

6

disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 48 years old on her alleged disability onset date of May 30, 2018. R. 34. She met the insured status requirements of the Social Security Act through September 30, 2020. R. 28. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged disability onset date and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post thoracic benign meningioma; status post thoracic bilateral laminectomy; depressive disorder; and anxiety disorder. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 29–30.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 30–34. The ALJ also found that Plaintiff had no past relevant work. R. 34.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as a price marker, a cashier, and a rental clerk–existed in the national economy and could be performed by Plaintiff. R. 35. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 30, 2018, her alleged disability onset date, through the date of the decision. R. 35–36.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 19; *Plaintiff's Reply Brief*, ECF No. 22. The Commissioner takes the position that his decision

should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21.

IV.     **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

James Bilenker[4] conducted an initial review of Plaintiff's medical record on behalf of the state agency on March 22, 2019. R. 75–107. Consultant Bilenker opined, *inter alia*, that Plaintiff could occasionally (cumulatively up to one-third or less of an eight-hour day) lift and/or carry (including pulling upward) 10 pounds, could frequently (cumulatively more than one-third and up to two-thirds of an eight-hour day) lift and/or carry (including pulling upward) less than 10 pounds, could stand and/or walk for a total of 4 hours, and could sit for a total of about 6 hours in an eight-hour workday. R. 80–81, 91–92, 102–03. Consultant Bilenker also opined that Plaintiff was limited to occasionally pushing/pulling with her upper and lower extremities "due to risk of triggering or exacerbating thoracic pain symptoms" and was limited to occasionally reaching overhead. R. 81–82 (referring to "see below" when finding that Plaintiff was limited to only occasionally reaching overhead bilaterally), 92–93 (same), 103–04 (same). Under the heading "RFC – Additional Explanation[,]" Consultant Bilenker explained as follows:

> This is a 49 year old female with concurrent Title II and Title XVI claims, DLI of 09/30/2020, who alleges Tumor in spinal cord; weakness in arms; numbness in arms; pain in arms; depression; anxiety. The depression and anxiety can be assessed by a PC if indicated.
>
> The following excerpts form the documentation from the most recent MER dated 12/18/2018 (q.v.) are germane:
>
> "[Plaintiff], 48 year-old patient diagnosed with a recurrent thoracic meningioma

---

[4] This consultant's credentials do not appear in the record. The Court will refer to him as "Consultant Bilenker."

now with spinal cord contact and increasing symptoms. She has completed a course of proto beam radiation therapy to C5-T6 on 6/28/18 [and] returns today for follow-up. She has had great difficult post-radiation with period increasing of back pain and arm symptoms (numbness). She has been on numerous steroid tapers and each time she comes off this medication her symptoms flair [sic]. She recently underwent imaging with an MRI of the spine on 12/11/18 which showed stable disease in the spine without any new changes in the spinal cord."

"Despite this numbness to surgical site persists. She is moderately fatigued. She experiences a little muscle weakness[.] When she stops taking her steroids her neurological symptoms get worse. She reports improvement within 24 hours of restarting steroids. The patient continues to have symptoms post radiation despite radiographic stability. My concern is for radiation induced swelling in the treatment site which is contributing to this. Given that she is now 6 months out from radiation and has failed numerous steroid tapers I will have her return to her referring surgeon for consideration of any surgical intervention."

"The patient is very hesitant for any surgery given her long recovery period with her last surgery but given her steroid dependence I would like to have her evaluated. While undergoing evaluation, I will restart the patient on her Medrol (she tolerates it better than dexamethasone) and will have her check in with us in 2-3 weeks to assess her symptoms[.]"

Of note, even at her best, the MER indicates that she has been rated formally as: "ECOG Performance Status:[5] 1 – No physically strenuous activity, but ambulatory

---

[5] "The Eastern Cooperative Oncology Group (ECOG) created its performance scale in 1982 to measure cancer patients' functional abilities." *Aliya A. v. Comm'r of Soc. Sec.*, No. 20-CV-1004S, 2022 WL 600839, at *4 n. 3 (W.D.N.Y. Mar. 1, 2022) (citations omitted). Specifically,

> The ECOG Scale of Performance Status "describes a patient's level of functioning in terms of their ability to care for themselves, daily activity, and physical ability (walking, working, etc.)." . . . The ECOG scale "delineat[es] scores from Grade 0 to 5 and find[s] that Grade 0 means the individual can be '[f]ully active, able to carry on all pre-disease performance without restriction,' *Grade 1 means the individual is '[r]estricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, e.g., light house work, office work,'* Grade 2 means the individual is '[a]mbulatory and capable of all selfcare but unable to carry out any work activities; up and about more than 50% of waking hours,' Grade 3 means the individual is '[c]apable of only limited selfcare, confined to bed or chair more than 50% of waking hours,' Grade 4 means the individual is '[c]ompletely disabled; cannot carry on any selfcare; totally confined to bed or chair,' Grade 5 means the individual is '[d]ead.'"

9

> and able to carry out light or sedentary work (e.g. office work, light house work)."
>
> The claimant's 3373-Function Report[6] reveals credible detailed description of substantial compromise ADLs due primarily to waxing and waning intractable pain. Upper body/arm movements in particular tend to exacerbate her symptoms.
>
> It is important to note that this RFC takes into account not simply the limitations associated with her impairment but, just as importantly, the restrictions necessary to avoid precipitating and/or exacerbating her symptomatology. EOD = AOD.

R. 82–83, 93–94, 104–05. Consultant Bilenker further opined. "Based on the seven strength factors of the physical RFC (lifting/carrying, standing, walking, sitting, pushing, and pulling), the individual demonstrates the maximum sustained work capability for" sedentary work. R. 84, 95, 106.

Toros Shahinian, M.D., reviewed Plaintiff's medical record on reconsideration for the state agency on October 10, 2019. R. 121–44. Dr. Shahinian agreed with the sitting, standing/walking, reaching, and pushing/pulling limitations found by Consultant Bilenker. R. 127–28, 139–40. Under the heading "RFC – Additional Explanation[,]" Dr. Shahinian repeated Consultant

---

*Shannon M. v. Kijakazi*, No. CV 1:21-2865-SVH, 2022 WL 780783, at *2 n.3 (D.S.C. Mar. 15, 2022) (citations omitted) (emphasis added).
[6] Plaintiff stated in her function report that, *inter alia*, her condition "has greatly affected every aspect of my life. Driving distance, day trips, being active, hanging pictures, curtains, preparing big meals, amusement parks, moving anything heavy[,] holding my grandson[,]" R. 314 (emphasis added); she has "problems with pulling shirts on & off over my head[,]" *id*.; she uses a "brush for [bathing her] back, hard to reach[,]" *id*.; she wears "[p]onytails most days, anything over my shoulder is an issue[,]" *id*.; she does not shave "as often—depends on the day & how my back feels[,]" *id*.; she does not shower or shave as often as she used to as "its [sic] just more difficult than it should be[,]" R. 315; her cooking habits have changed as she is "now unable to chop, lift slice or stand at the stove for long periods of time[,]" R. 315; she "[c]annot drive more than an hour. My arms & hands go numb and lower back as well, also causes pain[,]" R. 316; she shops for groceries "a little at a time. It's an excuse to get out plus I cannot push or maneuver a heavy shopping cart or carry too much[,]" *id*.; on a daily basis, she reads and watches television and "some social media[,]" but she has "to switch positions often[,]" R. 316–17; she "used to be very active, played on a softball team, went rollerskating, horseback riding, kayaking, sports with my children. Can no longer do any of the above[,]" R. 317.

10

Bilenker's narrative with the additional explanation:

> RECON ANALYSIS
>
> ALLEGES WORSENING CONDITION.
>
> DR. FLORCZKY – EXAM 7/2019 – OX3, ANXIOUS NORMAL ROM IMP – RASH, HEADACHES, ANXIETY, DEPRESSION, RECURRENT THORACIC SPINAL MENINGIOMA, PERSISTENT TIREDNESS.
>
> DR. DEMESMIN – EXAM 6/2019 – CA TENDERNESS, MUSCLE SPASM, POSITIVE TRIGGER PONITS [sic], SPURLING TEST POSITIVE, FACET LADING POSITIVE. LS TENDERNESS AND SPASMS POSITIVE SLG AT 45 DEG. DX- CERVICALGIA, CERVICAL RADICULOPATHY, THORACIC SPINE PAIN AND FACET SYNDROME AND SPONDYLOSIS, MENINGIOMA.
>
> Considered the consistency, supportability, and other relevant factors, I AFFIRM ABOVE RATING AS WRITTEN.

R. 129–30, 141–42. Dr. Shahinian further opined, "Based on the seven strength factors of the physical RFC (lifting/carrying, standing, walking, sitting, pushing, and pulling), the individual demonstrates the maximum sustained work capability for" sedentary work. R. 131, 143.

### V.     DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating the opinions of the state agency medical consultants. *Plaintiff's Brief*, ECF No. 19, pp. 7–15; *Plaintiff's Reply Brief*, ECF No. 22, pp. 2–4. For the reasons that follow, the Court agrees that the ALJ erred in her evaluation of these opinions.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected,

and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[7] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior

---

[7] As previously noted, Plaintiff's claims were filed on February 6, 2019.

administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

13

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: she can stand/walk up to 6 hours total per workday but no more than 1 hour at a time. She would then need to sit or shift positions for up to 5 minutes every hour while remaining on task. She cannot climb ropes, ladders or scaffolds or work at heights. She cannot operate dangerous machinery (defined as machines that cut or shear). She can only occasionally stoop. She can perform no more than occasional overhead lifting and reaching at the light level (the other directions and reaching are not restricted). She can perform no more than frequent handling. She must avoid temperature extremes and cannot perform outdoor work. She is limited to low stress work (defined as unskilled work involving simple, routine tasks having no fast production rate pace, such as assembly line work).

R. 30. In making this determination, the ALJ found, *inter alia*, that the state agency medical consultants' opinions were not persuasive, reasoning as follows:

> The State agency medical consultants' physical assessments are found to be unpersuasive. They found the claimant limited to a reduced range of light work where they would lift and/ or carry 10 pounds occasionally, less than 10 frequently, stand and/or walk four hours, and push and pull would be limited in the upper and lower extremities. In addition, the claimant was found to have postural, environmental, and reaching limitations with the bilateral upper extremities. (2A; 3A; 7A; 8A). Nevertheless, despite the claimant's neck and upper extremity pain and range of motion limitations, the claimant has consistently shown a normal gait, normal range of motion, and full muscle strength in the lower extremities. This would not support the alleged walking, standing, or push or pull limitations with the lower extremities. (1F; 4F; 5F; 8F). Instead, the residual functional capacity is more consistent with the medical record.

R. 34.

Plaintiff challenges the ALJ's conclusion, arguing that the ALJ did not adequately consider the regulatory factors of consistency and supportability. *Plaintiff's Brief*, ECF No. 19, pp. 7–15; *Plaintiff's Reply Brief*, ECF No. 22, pp. 2–4. Plaintiff insists that these state agency opinions are both unanimous and uncontroverted by other record evidence. *Plaintiff's Brief*, ECF No. 19, pp. 9–13; *Plaintiff's Reply Brief*, ECF No. 22, pp. 3–4. Plaintiff further argues that the ALJ mischaracterized the state agency medical opinions as limiting Plaintiff to "a reduced range

of light work" when, in fact, these opinions reflect sedentary work limitations. *Plaintiff's Brief*, ECF No. 19, pp. 14–15.

In response, the Commissioner disagrees, arguing that the ALJ followed the regulatory framework and that substantial evidence supports her decision. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21, pp. 10–13. "Plaintiff's contention that the ALJ did not adequately articulate her reasoning for finding the consultants' opinions unpersuasive is without merit" and that this Court must uphold the ALJ's decision even if contrary evidence supports the opposite conclusion. *Id*. at 12–13. The Commissioner's arguments are not well taken.

The ALJ failed to sufficiently explain her evaluation of the state agency medical consultants' opinions. In determining Plaintiff's RFC, the ALJ found that "despite the claimant's neck and *upper* extremity pain and range of motion limitations, the claimant has consistently shown a normal gait, normal range of motion, and full muscle strength in the *lower* extremities. This would not support the alleged walking, standing, or push or pull limitations with the *lower* extremities." R. 34. (emphasis added). The ALJ apparently confused findings regarding Plaintiff's lower extremities with the limitations in her upper extremities as found by the state agency consultants. *Id*. Without an explanation from the ALJ explaining this apparent confusion, is not clear to this Court why the mention of this evidence establishes an inconsistency between this portion of the state agency opinions and the record evidence. Fundamentally, the ALJ's failure to adequately explain how she considered the consistency factor in this regard frustrates this Court's ability to determine whether substantial evidence supports the ALJ's evaluation, the RFC determination, and, ultimately, the ALJ's disability determination. *See Moldavsky v. Kijakazi*, No. CV 22-1447, 2023 WL 3570927, at *5 (E.D. Pa. May 19, 2023) ("Unclear from the ALJ's summary [of the medical evidence], though, is how this evidence does not support and is

inconsistent with Dr. Magidenko's opinion. As such, more than a conclusory statement is needed in order to permit meaningful judicial review and to confirm that substantial evidence supports the ALJ's opinion."); *Nicholas R. v. Kijakazi*, No. CV 22-04510, 2023 WL 3580837, at *7 (D.N.J. May 19, 2023) (remanding where, *inter alia*, "the ALJ failed to thoroughly discuss the purported inconsistency of Dr. Meza's opinion" and the ALJ's "conclusory and unsupported statements of inconsistency are insufficient for this Court to engage in a meaningful review"); *cf. Lawrence v. Kijakazi*, No. 22-CV-4995, 2023 WL 7129950, at *9 (E.D. Pa. Oct. 30, 2023) ("But [the ALJ] did not identify any alleged inconsistencies. General conclusions concerning the Plaintiff's RFC are not sufficient to satisfy the ALJ's obligation under § 404.1520c(b)(2) to explain how she considered the consistency of a medical opinion with the evidence from other sources in the record. Furthermore, the ALJ's decision 'puts the cart before the horse' by improperly treating Plaintiff's 'above-defined RFC' as a settled fact rather than something that was being shaped by the ALJ's consideration of each piece of evidence, including Dr. Dankmyer's opinion.").

Moreover, the ALJ has not explained how she considered the supportability of these state agency opinions. R. 34. The state agency consultants expressly explained, *inter alia*, that they limited Plaintiff to occasional pushing/pulling with the upper and lower extremities "due to the risk of triggering or exacerbating thoracic pain symptoms[.]" R. 80–81, 91–92, 102–03, 127–28, 139–40. In limiting Plaintiff to, *inter alia*, only occasionally lifting and/or carrying 10 pounds and frequently lifting and/or carrying less than 10 pounds, and occasionally reaching overhead bilaterally, the consultants referred to their narrative discussion, which reflected increasing symptoms, evidence that Plaintiff had been referred to her surgeon for consideration of additional surgery in light of her failed steroid tapers, the exacerbation of her symptoms with

upper body/arm movements, and her positive trigger points, muscle spasms, and positive Spurling test; the consultants opined that their restrictions were "necessary to avoid precipitating and/or exacerbating her symptomatology." R. 80–83, 91–94, 102–05, 127–30, 139–42. As detailed above, the ALJ neither discussed nor even acknowledged this evidence when considering the persuasiveness of these opinions. R. 34.

Furthermore, the Court agrees with Plaintiff that the ALJ improperly characterized the state agency medical opinions as limiting Plaintiff "to a reduced range of light work" even though the ALJ conceded that these consultants found that Plaintiff was limited to, *inter alia*, lifting and/or carrying "10 pounds occasionally, less than 10 frequently, stand and/or walk four hours[.]" *Id.*; *see also* 20 C.F.R. §§ 404.1567(b) (providing that light work involves, *inter alia*, "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"), 416.967(b) (same); 20 C.F.R. §§ 404.1567(a) (explaining that sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met"), 416.967(a) (same).

The Court cannot conclude that the ALJ's deficient evaluation of the state agency medical opinions is harmless. This is particularly so where, as the ALJ acknowledged at the administrative hearing, R. 69-70, Plaintiff would qualify as "disabled" if she were limited to only sedentary work.

This Court therefore concludes that remand of the matter for further consideration is appropriate.[8] Moreover, remand is appropriate even if, upon further examination of the opinions of the state agency medical consultants and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date: September 13, 2024                   *s/Norah McCann King*
                                            NORAH McCANN KING
                                            UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the opinions of the state agency medical consultants and the RFC determination, the Court does not consider those claims.